Mitchell A. Stephens (11775)
Dillon P. Olson (16120)
JAMES DODGE RUSSELL & STEPHENS, P.C.
545 East 300 South
Salt Lake City, Utah 84102
Telephone: 801.363.6363
Email: mstephens@jdrslaw.com
dolson@jdrslaw.com

*Attorneys for Defendants*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**

| | |
|---|---|
| VAREX IMAGING CORPORATION and VAREX IMAGING DEUTSCHLAND AG,<br><br>*Plaintiffs*,<br><br>v.<br><br>HOUMAN JAFARI, CETTEEN GMBH, H&P ADVANCED TECHNOLOGY GMBH, ESSPEN GMBH, and H&S HOLDING UG,<br><br>*Defendants*. | **MOTION TO DISMISS**<br><br>Case No. 2:24-cv-00796-HCN-DBP<br><br>Judge Howard C. Nielson, Jr.<br><br>Chief Magistrate Judge Dustin B. Pead |

Pursuant to Rules 4 and 12 of the Federal Rules of Civil Procedure, Defendants Houman Jafari, CETTEEN GMBH, H&P Advanced Technology GmbH, Esspen GmbH, and H&S Holding UG (collectively "Defendants"), by and through counsel, hereby submit this Motion to Dismiss (the "Motion"), which seeks dismissal of the Complaint, [Dkt. 2], that Plaintiffs Varex Imaging Corporation ("Varex U.S.") and Varex Imaging Deutschland AG ("Varex Germany") (collectively "Plaintiffs") filed on or around October 22, 2024.

## INTRODUCTION

The gravamen of Plaintiffs' claims concern the Joint Venture Agreement between the parties, which Plaintiffs allege that Dr. Jafari "lured" them into signing only to then "exploit[] the joint venture for his personal gain." [Dkt. 2 (Compl.) ¶ 7]. This Joint Venture Agreement, as Plaintiffs have argued in another proceeding before this Court, is the subject of multiple other "dispute[s] in German court, between German businesses concerning a German JVA governed by German law and with a German choice-of-forum clause." In an apparent effort to exert pressure on Defendants, increase the total expense associated with the extensive litigation between the parties, and obtain a strategic venue advantage, Plaintiffs improperly filed their Complaint in Utah.

However, Utah is not the appropriate forum for the dispute between the parties. Indeed, ***seven*** other civil proceedings concerning the parties' dispute are currently pending in Germany. The agreements in place, which Plaintiffs prolifically cite in their Complaint, both have clear forum selection provisions vesting exclusive jurisdiction with German Courts and choice of law provisions requiring application of German law. Additionally, the situs for the available witnesses, evidence, and transactions between the parties is unquestionably in Germany, which renders continued litigation in Utah unnecessarily inconvenient and expensive.

Additionally, this Court lacks personal jurisdiction over Defendants, which are all based in Germany and do not transact business in Utah. Any contacts between Defendants and Utah (namely, Dr. Jafari) occurred in connection with the parties' joint venture, which the parties agreed would be governed under the laws and jurisdiction of Germany. In any case, exercise of personal jurisdiction over Defendants does not comport with the due process protections set forth in the Fifth and Fourteenth Amendments to the United States Constitution.

The Court should dismiss this matter for improper venue and for lack of personal jurisdiction.

## FACTUAL BACKGROUND

### Defendants and Their Residence in Germany

1. Houman Jafari ("Jafari") is a German resident who resides in Erlangen, Germany. [*See* Ex. 1 (Declaration of Dr. Houman Jafari), at ¶¶ 2–3; *see also* Dkt. 2 (Compl.) ¶ 16].

2. CETTEEN GmbH ("CETTEEN") is registered in Germany as a Gesellschaft mit beschränkter Haftung.[1] [Ex. 2 (Declaration of Dr. Phat Tran) ¶ 6; *see also* Dkt. 2 (Compl.) ¶ 19].

3. CETTEEN has only one office, located in Erlangen, Germany. [Ex. 2 (Declaration of Dr. Phat Tran) ¶ 6].

4. CETTEEN has never been registered to do business in Utah, has never had an office located in Utah, employees based in Utah, members or owners that reside in Utah, a registered agent that accepts service in Utah, bank accounts in Utah, has never owned, leased, or had any interest in real property located in Utah, and does not transact business within the state of Utah. [*See* Ex. 2 (Declaration of Dr. Phat Tran), ¶¶ 7.a–7.h].

5. H&P Advanced Technology GmbH ("H&P") is registered in Germany as a Gesellschaft mit beschränkter Haftung. [Ex. 3 (Declaration of Dr. Martin Reimer) ¶ 3; *see also* Dkt. 2 (Compl.) ¶ 17].

6. H&P has only one office, located in Erlangen, Germany. [Ex. 3 (Declaration of Dr. Martin Reimer) ¶ 3].

---

[1] GmbH is a type of German limited liability company containing distinct legal and structural requirements to domestic limited liability companies.

7. H&P has never been registered to do business in Utah, has never had an office located in Utah, employees based in Utah, members or owners that reside in Utah, a registered agent that accepts service in Utah, bank accounts in Utah, has never owned, leased, or had any interest in real property located in Utah, and does not transact business within the state of Utah. [Ex. 3 (Declaration of Dr. Martin Reimer) ¶¶ 4.a–4.h].

8. ESSPEN GmbH ("ESSPEN") is registered in Germany as a Gesellschaft mit beschränkter Haftung. [Ex. 2 (Declaration of Dr. Phat Tran) ¶ 3; *see also* Dkt. 2 (Compl.) ¶ 20].

9. ESSPEN has only one office, located in Erlangen, Germany. [Ex. 2 (Declaration of Dr. Phat Tran) ¶ 3].

10. ESSPEN has never been registered to do business in Utah, has never had an office located in Utah, employees based in Utah, members or owners that reside in Utah, a registered agent that accepts service in Utah, bank accounts in Utah, has never owned, leased, or had any interest in real property located in Utah, and does not transact business within the state of Utah. [Ex. 2 (Declaration of Dr. Phat Tran) ¶¶ 4.a–4.h].

11. H&S Holding UG ("H&S") is registered in Germany as a Unternehmergesellschaft.[2] [*See* Ex. 1 (Declaration of Dr. Houman Jafari), at ¶ 6; *see also* Dkt. 2 (Compl.) ¶ 18].

12. H&S has only one office, located in Erlangen, Germany. [*See* Ex. 1 (Declaration of Dr. Houman Jafari), at ¶ 6].

[2] UG is a type of German limited liability company, often used for entrepreneurial and startup companies.

13. H&S has never been registered to do business in Utah, has never had an office located in Utah, employees based in Utah, members or owners that reside in Utah, a registered agent that accepts service in Utah, bank accounts in Utah, has never owned, leased, or had any interest in real property located in Utah, and does not transact business within the state of Utah. [*See* Ex. 1 (Declaration of Dr. Houman Jafari), at ¶¶ 7.a–7.h].

**The Joint Venture Agreement and Intellectual Property License Agreement**

14. On November 22, 2018, Varex Germany, Jafari, CETTEEN, and H&P executed a Joint Venture Agreement (the "JVA").[3] [*See* Ex. 4 (JVA); *see also* Dkt. 2 (Compl.) ¶¶ 6, 57].

15. Through the JVA, the parties agreed " [redacted] " and to [redacted]." [*See* Ex. 4 (JVA) at 6, Preamble E].

16. The company formed in connection with the JVA (VEC Imaging GmbH & Co. KG) was also intended [redacted]." [*Id.*].

17. The JVA provides that [redacted] the JVA.[4] [*See id.* at § 18.4].

[3] Even though Varex U.S. is not a direct party to the JVA, Varex Germany is a "wholly owned subsidiary of Varex U.S., which "caused Varex Germany to enter into a joint venture agreement." [Dkt. 2 (Compl.) ¶¶ 6, 15].

[4] [redacted] [JVA at 6, Preamble E].

18. The JVA also states that the [redacted] [*Id.* at § 18.3].

19. The JVA also required Varex Germany to deliver "[redacted]. [*See* Ex. 4 (JVA) at § 2.3.1.2].

20. The Intellectual Property License Agreement (the "IP Agreement") was [redacted]. [*See* Ex. 4 (JVA) at 33].

21. In connection with the JVA, Varex Germany, Varex U.S., H&P, and CETTEEN each executed the IP Agreement. [*See* Dkt. 2 (Compl.) ¶ 72; *see also* Ex. 5 (IP Agreement)].

22. The IP Agreement "relates to categories of IP [the parties] each brought to the joint venture and ownership and maintenance of certain assets during and after" the JVA. [Dkt. 2 (Compl.) ¶ 72].

23. The IP Agreement states that "[redacted]." [*See* Ex. 5 (IP Agreement) at § 10.1].

24. The IP Agreement also provides [redacted]." [*Id.* at § 10.2].

**Plaintiffs' Allegations Against Defendants**

25. Plaintiffs' Complaint is centered on the JVA, which Plaintiffs allege that Dr. Jafari pursued as part of a "scheme to improperly obtain, misappropriate, and illegally use intellectual property." [Dkt. 2 (Compl.) ¶ 1]. Plaintiffs allege that Dr. Jafari "never intended for the joint

venture with Varex to succeed," "lured" Plaintiffs into executing the JVA, and that Dr. Jafari "exploited the joint venture for his personal gain." [*Id.* ¶ 7].

26. Plaintiffs assert causes of action for violations of the Racketeer Influenced and Corrupt Organizations Act, Fraudulent Inducement, Trade Secret Misappropriation (under both federal and state statutes), unjust enrichment, copyright infringement, and tortious interference. [*See* Dkt. 2 (Compl.) ¶¶ 110–213].

27. Each of Plaintiffs' claims concerns ownership and use of certain intellectual property, and involves lengthy discussions of the JVA, the IP Agreement, and the import of both agreements in resolving those claims. [*See, e.g.*, Dkt. 2 (Compl.) ¶¶ 3, 6–7, 9, 16, 23, 31, 33, 40, 43, 46, 49–50, 52–72, 74–75, 77, 81, 83, 87, 91, 94, 96, 103, 108, 129–130, 136, 139–142, 146, 155, 172, 184–185, 187, 189, 191, 205–206 (references to the joint venture); *id.* at ¶¶ 6–10, 12, 16, 23, 58–71, 73, 75, 81–89, 91–101, 103–108, 122–123, 129–130, 136, 139, 146, 154–156, 161, 171–173, 178, 183–184, 186–190, 192, 196–197, 201, 205–207, 209–211 (references to VEC Imaging GmbH & Co. KG, one of the central components of the JEV); *id.* ¶¶ 6, 70, 72, 75, 77, 83 (references to the IP Agreement and related license terms)].

## ARGUMENT

### I. Germany is the Appropriate Forum for Plaintiffs' Claims.[5]

#### A. The JVA's and IP Agreement's Forum Selection Clauses

"[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atlantic Marine Const. Co., Inc. v. United States Dist. Ct. for Western Dist. of*

[5] "A motion to dismiss based on a forum selection clause is analyzed as a motion to dismiss for improper venue." *Real Prop. Mgmt. SPV LLC v. Truitt*, No. 2:24-cv-00184, 2024 WL 3358654, at *2 (D. Utah July 9, 2024).

*Texas*, 571 U.S. 49, 63 (2013) (cleaned up) ("When the parties have agreed to a valid forum-selection clause, a district court should ordinarily transfer the case to the forum specified in that clause."). "The enforcement of valid forum-selection clauses, bargained for by the parties, protects their legitimate expectations and furthers vital interests of the justice system." *Id.* (cleaned up). "If the parties have previously agreed that litigation shall be conducted in a particular forum, there is a strong presumption favoring venue in that forum." *Real Prop. Mgmt.*, 2024 WL 3358654, at *2 (quoting *The Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972)).

When analyzing forum selection clauses, "the Tenth Circuit classifies the forum selection clause as either 'mandatory' or 'permissive.'" *Real Prop. Mgmt.*, 2024 WL 3358654, at *2. "Where venue is specified with mandatory or obligatory language, the clause is classified as mandatory and is enforced." *Id.* Here, the JVA mandates that the courts in Germany " [REDACTED] " the JVA. [*See* Ex. 4 (JVA) at § 18.4 (emphasis added)]. The IP Agreement similarly instructs that " [REDACTED] " [*See* Ex. 5 (IP Agreement) at § 10.2 (emphasis added)]. Both provisions are mandatory in nature. *See, e.g.*, *Nazaruk v. eBay, Inc.*, No. 2:06-cv-242, 2006 WL 2666429, at *3 (D. Utah Sept. 14, 2006) (holding that the word "shall" "connotes a mandatory nature" and dismissing for improper venue); *Baldwin v. Aviva Life and Annuity Co.*, 2:16-cv-202, 2017 WL 722001, *4 (D. Utah Feb. 23, 2017) (interpreting the phrase "exclusive jurisdiction" to be mandatory and dismissing for improper venue); *Comm. Concepts, Inc. v. Alon Enters., Ltd.*, No. 2:06-cv-782, 2006 WL 3858278, at *1 (D. Utah Dec. 29, 2006) (granting motion to dismiss

for improper venue based on mandatory forum selection clause); *Real Prop. Mgmt.*, 2024 WL 3358654, at *2 (enforcing forum selection clause).

The broad language of the forum selection clauses in the JVA and IP Agreement encompasses the entirety of Plaintiffs' claims—whether framed as contractual or not. *See TecServe v. Stoneware, Inc.*, No. 2:08-cv-144, 2008 WL 3166653, at *4 (D. Utah Aug. 5, 2008) (applying forum selection to non-contract claims and dismissing for improper venue, acknowledging that courts "examine whether the claims are within the scope of the forum selection clause, no matter how those claims are characterized in artful pleading"); *see also Baldwin v. Aviva Life and Annuity Co.*, No. 2:16-cv-202, 2017 WL 722001, at *1 (D. Utah Feb. 23, 2017) (dismissing for improper venue where non-contract claims fell "within the scope of the Contract's forum-selection clause").

For example, Plaintiffs' RICO claims are based on allegations of Defendants "improperly obtaining intellectual property from competitors," [Dkt. 2 (Compl.) ¶ 114], including through the execution of the JVA and operations of VEC (a company formed in connection with the JVA). [*See id.* ¶¶ 122–123, 129–130]. Plaintiffs' fraudulent inducement claim is based on representations that Defendants are alleged to have made "for the purpose of inducing Varex to ***enter into the JVA***." [*Id.* ¶ 136 (emphasis added)]. The trade secret claims allege that "Varex IP" was misappropriated by VEC, [*id.* ¶¶ 96–102, 155–156, 172–173], which entity "the joint venture established." [*Id.* ¶ 58]. Plaintiffs allege that Defendants were unjustly enriched through Plaintiffs' payment "[u]nder the JVA" and Plaintiffs' "substantial investments in the joint venture." [*Id.* ¶ 184]. Plaintiffs' copyright claims are based on intellectual property given to VEC in connection with the joint venture, which Plaintiffs allege was "reverse-engineered." [*Id.* ¶¶ 198, 201]. Finally, Plaintiffs' tortious interference claim is based on the alleged interference with a customer

relationship that involved VEC's performance to "assist the joint venture." [*Id.* ¶¶ 206, 208]. These claims, all of which invoke the JVA and related agreements, "are within the scope of the forum selection clause." *TecServe*, 2008 WL 3166653, at *4.

By acknowledging the validity of the JVA and IP Agreement, [Dkt. 2 (Compl.) ¶¶ 6, 72], Plaintiffs cannot dispute that they stipulated to a particular forum. In fact, by executing the JVA and IP Agreement, Plaintiffs have already "exercised [their] venue privilege" and "waive[d] the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Atlantic Marine Const.*, 571 U.S. at 64. Accordingly, Plaintiffs' "choice of forum merits no weight" and the Court "may consider arguments about public-interest factors only." *Id.* Public-interest factors include "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (quoting *Norwood v. Kirkpatrick*, 349 U.S. 29, 32, (1955)). The public-interest factors will "rarely defeat a transfer motion." *Id.* at 64.

Not surprisingly, the public-interest factors do not warrant an exceptional result in this case. Germany is an adequate litigation forum that is no more congested than the United States. Indeed, in a prior proceeding, Plaintiffs declared their intention to "assert claims concerning the impact of the JVA on the intellectual property in question, including whether CETTEEN has any rights to that property at all under the JVA, and CETTEEN's misuse of Varex's intellectual property." [Ex. 6 (*In re CETTEEN GmbH*, Case No. 2:24-mc-00228), Dkt. 36 at 3–4]. Plaintiffs further represented that these contentions "are germane to the parties' intellectual property dispute." [*Id.* at 4]. Not only did Plaintiffs represent that the parties' intellectual property dispute

is germane to the pending questions in Germany under the JVA, they also indicated that German courts would be able to address the claims as part of ongoing proceedings. [*See id.*].

Similarly, Utah has no localized interest concerning the instant dispute. Rather, the issues before the Court overlap with what Plaintiffs agree is "a dispute in German court, between German businesses concerning a German JVA governed by German law and with a German choice-of-forum clause." [Ex. 7 (*In re CETTEEN GmbH*, Case No. 2:24-mc-00228), Dkt. 23 at 9]. Finally, there is no interest "in having the trial of a diversity case" in Utah because this is not a diversity case. If anything, the German forum is "at home with the law" given the applicable choice of law provisions and the residency of the parties.[6]

Therefore, the Complaint should be dismissed under the parties' forum-selection agreements.

B. Forum Non Conveniens

Even if the forum selection clauses were not controlling, venue should be transferred to Germany based on forum non conveniens. "The central purpose of any forum non conveniens inquiry is to ensure that the trial is convenient." *Gschwind v. Cessna Aircraft Co.*, 161 F.3d 602 (10th Cir. 1998). Where the "alternative forum is in a foreign country," courts consider whether there is "an adequate alternative forum in which the defendant is amenable to process" and whether "that foreign law is applicable." *Fireman's Fund Ins. Co. v. Thyssen Min. Const. of Canada, Ltd.*, 703 F.3d 488, 495 (10th Cir. 2012). Both considerations are met here. Defendants, which are

[6] Although Plaintiffs' private interests in Utah are irrelevant, almost all of the necessary witnesses are based in Germany, which has a compulsory process for the attendance of unwilling witnesses and a less expensive and more convenient setting for attendance of willing witnesses. *Atlantic Marine Const.*, 571 U.S. at 62 n.6 (citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6 (1981)).

already involved in multiple proceedings in Germany involving Plaintiffs, are amenable to litigating in accordance with the parties' forum selection agreements. The Germany proceedings are also adequate given Plaintiffs' stated intent to enforce its ownership claims in those forums. [Ex. 6 (*In re CETTEEN GmbH*, Case No. 2:24-mc-00228), Dkt. 36 at 3–4]. Additionally, German law is not only "applicable," it is controlling under both the JVA and IP Agreement. [*See* Ex. 4 (JVA) at § 18.4; Ex. 5 (IP Agreement) at § 10.2]. Further, the witnesses and evidence likely to be at issue are primarily located in Germany. [*See supra* Factual Background ¶¶ 1–13]. It is more convenient and efficient for German courts to apply German law and oversee witnesses and evidence located in Germany.

Therefore, the Complaint should be dismissed under forum non conveniens. *See, e.g.*, *Yavuz v. 61 MM, Ltd.*, 576 F.3d 1166 (10th Cir. 2009) (affirming dismissal of Complaint on forum non conveniens grounds and finding that Switzerland was an "available and adequate alternative forum"); *Archangel Diamond Corp. Liquidating Trust v. OAO Lukoil*, 75 F. Supp.3d 1343, 1361 (D. Colo. Dec. 18, 2014) (dismissing complaint based on forum non conveniens grounds and concluding Russia to be an adequate litigation forum).

## II. The Court Has No Personal Jurisdiction Over Defendants.

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) and the parties (personal jurisdiction)." *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007). Plaintiffs bear the burden of establishing personal jurisdiction over Defendants. *See Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011).

"[B]efore a federal court can assert personal jurisdiction over a defendant in a federal question case, the court must determine (1) whether the applicable statute potentially confers jurisdiction by authorizing service of process on the defendant and (2) whether the exercise of jurisdiction comports with due process." *United States v. Country Classic Dairies, Inc.*, No. 2:05-cv-00499, 2006 WL 2331061, at *1 (D. Utah Aug. 8, 2006) (cleaned up); *see also Sampson v. Delta Air Lines, Inc.*, No. 2:12-cv-244, 2013 WL 6409865, at *2 (D. Utah Dec. 9, 2013). However, if a plaintiff fails to establish the propriety of service on a defendant under the first factor, the Court's jurisdictional analysis reverts to the traditional jurisdictional analysis under Utah's long arm statute and Fourteenth Amendment. *See Omni Capital Int'l Ldt. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 (1984); *see also Cory v. Aztec Steel Bldg., Inc.*, 468 F.3d 1226, 1233 (10th Cir. 2006); *Country Classic Dairies*, 2006 WL 2331061, at *2.

Here, Plaintiffs' Complaint should be dismissed because (A) Plaintiffs' statutory claims do not authorize international service on Defendants, and (B) Defendants' connections with Utah are not sufficient to confer general or specific personal jurisdiction over Defendants. Even if Plaintiffs could satisfy the statutory authorization factor, (C) exercise of jurisdiction over Defendants does not comport with due process.

A. <u>Plaintiffs' Statutory Claims Do Not Authorize International Service of Process</u>

Plaintiffs attempt to invoke federal-question jurisdiction based on the Racketeer Influenced and Corrupt Organizations Act, 28 U.S.C. § 1331, the Defend Trade Secrets Act, 18 U.S.C. § 1836, and the Copyright Act, § 17 U.S.C. § 506. [*See* Dkt. 2 (Compl.) ¶ 22]. Of the three statutes, only the RICO statute authorizes nationwide service. *See, e.g.*, *Cory*, 468 F.3d at 1235; *but see Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1071 (10th Cir. 2008) (ruling the "federal

Copyright Act" does not "provide[] for nationwide service of process"); *Hark'n Techs., Inc. v. Orange Whip Fitness X, LLC*, 1:21-cv-00054, 2022 WL 3370637, at *3 (D. Utah Aug. 16, 2022) ("The Defend Trade Secrets Act does not have nationwide service of process that would confer personal jurisdiction over all Defendants, therefore, the Court may exercise personal jurisdiction over Defendants only if personal jurisdiction would be proper" under state law). And even though RICO authorizes nationwide service, it does not authorize ***international*** service. *See Archangel Diamond Corp.*, 75 F. Supp.3d at 1361 (concluding first factor was not satisfied because "RICO does not confer jurisdiction [where] it does not authorize worldwide service of process").

Accordingly, the Court's jurisdictional analysis is controlled by Utah's long-arm statute. *See Capital Int'l Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 108 (1984); *see also Cory*, 468 F.3d at 1233; *Country Classic Dairies*, 2006 WL 2331061, at *2, which extends jurisdiction "to the fullest extent permitted by the due process clause of the Fourteenth Amendment." *Celtig, LLC v. Patey*, 347 F. Supp.3d 976, 982 (D. Utah 2018).

B. Defendants' Contacts With Utah Are Insufficient to Confer General or Specific Jurisdiction

"The Due Process Clause of the Fourteenth Amendment constrains a State's authority to bind a nonresident defendant to a judgment of its courts." *Walden v. Fiore*, 571 U.S. 277, 283 (2014). "Due process requires both that the defendant 'purposefully established minimum contacts with the forum State' and that the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Old Republic Ins. Co. v. Cont'l Motors, Inc.*, 877 F.3d 895, 903 (10th Cir. 2017) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 476 (1985)).

Personal jurisdiction can be either general, which involves contacts "so constant and pervasive as to render [defendant] essentially at home in the forum State," *Daimler AG v. Bauman*,

571 U.S. 117, 122 (2014), or specific, which involves consideration of the "relationship among the defendant, the forum, and the litigation," *Walden*, 571 U.S. at 284. In the instant case, there is no basis for a finding of either general or specific personal jurisdiction over Defendants.

*i. General Personal Jurisdiction*

General jurisdiction allows a court to "exercise jurisdiction over an out-of-state party for all purposes." *Old Republic Ins. Co.*, 877 F.3d at 903. "A party is subject to general personal jurisdiction only when its affiliations with the [forum] State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Kinding It Design, Inc. v. Creative Controls, Inc.*, 157 F.Supp.3d 1167, 1171 (D. Utah 2016) (quoting *Daimler AG*, 571 U.S. at 127). "Paradigm forums for general jurisdiction over a company are its place of formation and its principal place of business." *Spencer v. Harley-Davidson, Inc.*, No. 2:16-cv-00427, 2019 WL 1382285, *5 (D. Utah Mar. 27, 2019). Similarly, the paradigm forum for individuals "is the individual's domicile." *Celtig*, 347 F. Supp.3d at 982–983. Establishing general personal jurisdiction over a party is a "high burden." *Grynberg v. Ivanhoe Energy, Inc.*, 490 Fed. App'x 86, 94 (10th Cir. 2012).

Plaintiffs cannot establish general personal jurisdiction over the Defendants. Dr. Jafari is a resident of Germany with his domicile located in Germany. [*See* Ex. 1 (Declaration of Dr. Houman Jafari) ¶¶ 2–3]. Similarly, each of the entity defendants were formed in Germany, have principal places of business in Germany, and do not transact business in the state of Utah. [*See* Ex. 1 (Declaration of Dr. Houman Jafari) ¶¶ 6–8; Ex. 2 (Declaration of Dr. Phat Tran) ¶¶ 3–4, 6–7; Ex. 3 (Declaration of Dr. Martin Reimer) ¶¶ 3–4].

There is no basis to conclude that Defendants are "essentially at home" in the state of Utah.

*ii. Specific Personal Jurisdiction*

"Specific jurisdiction depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Spencer*, 2019 WL 1382285, *5; *see also Walden*, 571 U.S. at 284 ("The inquiry into the minimum contacts necessary to create specific jurisdiction focuses on the relationship among the defendant, the forum, and the litigation." (cleaned up)). "To meet the minimum requirements in the specific jurisdiction context, a defendant must purposefully direct its activities at the forum, and the plaintiff's injuries must arise out of those forum-related activities." *Sampson*, 2013 WL 6409865, at *4. Without the requisite connection between the forum state and the controversy, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Sup. Ct. of Cal., San Francisco Cty.*, 582 U.S. 255, 264 (2017).

Plaintiffs have failed to identify any activities that Defendants directed at the state of Utah. Rather, Plaintiffs have merely alleged that Dr. Jafari "traveled to Salt Lake City" in February 2017 in connection with the JVA ultimately executed between Varex Germany, Jafari, and H&P—all of which are based in Germany and which agreed to exclusive jurisdiction in Germany. [Dkt. 2 (Compl.) ¶ 45]. Plaintiffs also allege that an unspecified "technical team in Erlangen, Germany" worked with employees that Varex U.S. tasked with assisting under the JVA. [*See id.* at. ¶¶ 64–65]. Finally, Plaintiffs allege that Dr. Jafari sent an email to Varex U.S., which is based in Utah. [*See id.* ¶ 128].

Defendants cannot "be haled" into Utah courts based on such "random, fortuitous, or attenuated contacts." *See FITn40, LLC v. Glanbia Nutritionals (Ireland) Ltd.*, No. 2:20-cv-00871,

2022 WL 79910, at *4 (D. Utah Jan. 7, 2022). Indeed, "[t]he ***plaintiff cannot be the only link between the defendant and the forum***." *Walden*, 571 U.S. at 277 (emphasis added) ("[I]t is the defendant, not the plaintiff or third parties, who must create contacts with the forum state."). This is particularly true where the parties expressly agreed that the relationship giving rise to such contacts will be subject to the exclusive jurisdiction of Germany.

At bottom, Varex U.S. is the only alleged connection between Defendants and the state of Utah. Without Varex U.S., there is no connection between the Defendants and the state of Utah. This is insufficient to establish specific personal jurisdiction over Defendants. *See Younique, LLC v. Youssef*, No. 2:15-cv-783, 2016 WL 6998659, at *7 (D. Utah Nov. 30, 2016) ("[T]he mere fact that . . . conduct affected plaintiffs with connections to the forum State does not suffice to authorize jurisdiction.").[7]

*iii. Fair Play and Substantial Justice*

Even if Plaintiffs demonstrated adequate minimum contacts between Defendants and the state of Utah, the exercise of jurisdiction under the current circumstances would offend traditional notions of "fair play and substantial justice." *Burger King*, 471 U.S. at 476. In assessing whether personal jurisdiction comports with notions of fair play and substantial justice, courts consider:

> (1) the burden on the defendant, (2) the forum state's interest in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effective relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states in furthering fundamental social policies.

[7] Additionally, Plaintiffs' allegations do not identify any actions that H&S, ESSPEN, or CETTEEN directed at the state of Utah. [*See generally* Dkt. 2 (Compl.)]. Nor do they identify any activities that were outside of Dr. Jafari's representative capacity, which "insulate[s] [Dr. Jafari from the court's jurisdiction." *Purjes v. Diginext, LLC*, No. 2:19-cv-00309, 2019 WL 6324652, at *2 (D. Utah Nov. 26, 2019).

*Celtig*, 347 F. Supp.3d at 990. "The analyses of minimum contacts and reasonableness are complementary, such that the reasonableness prong of the due process inquiry evokes a sliding scale: the weaker the plaintiff's showing on minimum contacts, the less a defendant need show in terms of unreasonableness to defeat jurisdiction." *Alphagen Biotech v. Langoost Enters., LLC*, No. 2:13-cv-15, 2013 WL 2389792, at *7 (D. Utah May 30, 2013) (quoting *AST Sport Sci., Inc. v. CLF Distrib. Ltd.*, 514 F.3d 1054, 1061 (10th Cir. 2008) (cleaned up)).

Exerting personal jurisdiction over Defendants, which have not directed any activity toward the state of Utah, would be unfair, unreasonable, and unnecessarily burdensome. Defendants are each based in Germany and the majority of their witnesses and evidence would be located in Germany. The state of Utah has little interest in resolving this dispute, which amounts to a disagreement "between German businesses concerning a German JVA governed by German law and with a German choice-of-forum clause." [Ex. 7 (*In re CETTEEN GmbH*, Case No. 2:24-mc-00228), Dkt. 23 at 9]. It would be more convenient and efficient for Plaintiffs to simply pursue their claims regarding the JVA in the multiple proceedings already involving and addressing that subject matter.

Thus, the interests of fair play and substantial justice favor dismissal of the claims against Defendants.

C. <u>Exercise of Jurisdiction Over the Defendants Does Not Comport with Due Process</u>

Even assuming that Plaintiffs satisfy the statutory authorization factor necessary for federal question jurisdiction, this Court should nonetheless refrain from exercising jurisdiction over Defendants. "In federal question cases when assessing personal jurisdiction, the Fifth Amendment requires the plaintiff's choice of forum be fair and reasonable to the defendant." *Hark'n Techs.,*

*Inc. v. Orange Whip Fitness X, LLC*, 1:21-cv-00054, 2022 WL 1800880, at *2 (D. Utah March 28, 2022). Courts consider the following factors in assessing fairness and reasonability:

> 1) the extent of contact with the forum state, (2) the inconvenience of having to litigate in a foreign jurisdiction, (3) judicial economy, (4) the probable situs of the discovery proceedings, and (5) the nature of the defendant's activities and its impact beyond his state's borders.

*Id.*

Here, Defendants' contacts with the state of Utah are next to none. [*See supra* Factual Background ¶¶ 1–13]. Additionally, Defendants will be substantially inconvenienced through litigation in Utah, particularly given the location of the relevant evidence and witnesses in Germany. Additionally, JVA involves the activity of a German company, which was formed in Germany connection with the JVA. Finally, exercising jurisdiction will not benefit judicial economy. The parties are involved in ***seven*** competing civil proceedings and claims in Germany at the Regional Courts of Nuremberg concerning the parties' JVA and alleged breaches.[8] Thus, there is no reason to sanction duplicative proceedings involving activities and impacts that are already in the process of being addressed.

The United States Supreme Court has cautioned courts that "[g]reat care and reserve should be exercised when extending our notions of personal jurisdiction to the international field." *Asahi Metal Indust. Co., Ltd. v. Sup. Ct. of California, Solano Cty.*, 480 U.S. 102, 115 (1987). This Court should heed the warning from the United States Supreme Court and decline to exercise jurisdiction over Defendants, which would run afoul of the Due Process protections under the Fifth Amendment to the United States Constitution.

---

[8] This does not include criminal complaints filed in Germany.

## CONCLUSION

Plaintiffs' claims overlap with the dispute that Plaintiffs acknowledge are "between German businesses concerning a German JVA governed by German law and with a German choice-of-forum clause." [Ex. 7 (*In re CETTEEN GmbH*, Case No. 2:24-mc-00228), Dkt. 23 at 9]. This Court should therefore dismiss the Complaint based on the applicable forum selection clauses and the inconvenience associated with litigating in Utah. This Court should further dismiss the Complaint because the Court lacks personal jurisdiction over Defendants, both under the Fifth and Fourteenth Amendment of the United States Constitution.

Dated: June 27, 2025

JAMES DODGE RUSSELL & STEPHENS

*/s/ Dillon P. Olson*
Mitchell A. Stephens
Dillon Olson

*Attorneys for Defendants*